Ashley M. Simonsen (SBN 275203)
asimonsen@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4782
Facsimile: (424) 332-4749

Henry Liu (*pro hac vice forthcoming*)
Dillon H. Grimm (*pro hac vice forthcoming*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendant*
*The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GABRIELA MENDOZA, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE PROCTER & GAMBLE COMPANY, <br><br> Defendant. | Civil Case No.: 2:23-cv-01382-DMG-JPR <br><br> **DEFENDANT THE PROCTER & GAMBLE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> The Hon. Dolly M. Gee <br> Date: June 9, 2023 <br> Time: 9:30 am <br> Courtroom 8C |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................1

BACKGROUND.....................................................................................................2

I.     Plaintiff's Challenges to Children's Vapo Products. ...............................2

II.    FDA Regulations For VapoRub And VapoCream. ..................................4

      A.      FDA regulatory requirements for the labeling of over-the-counter medications.................................................................................5

      B.      FDA regulatory requirements for the labeling of cosmetics..............6

LEGAL STANDARD ............................................................................................6

ARGUMENT...........................................................................................................7

I.     Plaintiff's Claims Regarding VapoRub And VapoCream Are Expressly Preempted By The FDCA. .......................................................................7

      A.      Plaintiff's claims regarding VapoRub are preempted. ......................8

      B.      Plaintiff's claims regarding VapoCream are preempted.................11

II.    Plaintiff's Claims Should Be Dismissed Because She Fails To Allege That Children's Vapo Products Are Misleading.............................................12

      A.      Plaintiff's claims are impermissibly based on differential pricing. ...12

      B.      There is nothing deceptive about the marketing of children's products.......................................................................................14

      C.      Any duty to disclose claim is legally deficient under California law.......................................................................................17

III.   Plaintiff's Claims Should Be Dismissed Because She Fails To Plead An Injury. ....................................................................................................18

IV.   Plaintiff's Claims Fail For Additional Reasons. ....................................20

      A.      The CLRA, UCL, and FAL claims should be dismissed (Counts 1–3)...............................................................................20

i

DEFENDANT THE PROCTER & GAMBLE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 2:23-cv-01382-DMG-JPR

B.     The warranty claims should be dismissed (Counts 4–5)..................21

C.     The common-law claims suffer from multiple defects
       (Counts 6–8). .....................................................................22

       1.     The misrepresentation claims fail. ....................................22

       2.     The unjust enrichment claim fails......................................23

V.   Plaintiff Lacks Standing To Assert Certain Aspects Of Her Claims...........23

CONCLUSION ..............................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amara v. Publix Supermarkets, Inc.*,
  2022 WL 3357575 (M.D. Fla. Aug. 15, 2022) ....................................... 11

*Antonyan v. Ford Motor Co.*,
  2022 WL 1299964 (C.D. Cal. Mar. 30, 2022) ................................. 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................... 7, 21

*Banks v. R.C. Bigelow, Inc.*,
  536 F. Supp. 3d 640 (C.D. Cal. 2021) .................................... 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................... 7

*Boris v. Wal-Mart Stores, Inc.*,
  35 F. Supp. 3d 1163 (C.D. Cal. 2014) ........................... 2, 13, 14

*Boris v. Wal-Mart Stores, Inc.*,
  649 F. App'x 424 (9th Cir. 2016) (unpublished) .................... 13

*Burchfield v. Prestige Consumer Healthcare, Inc.*,
  534 F. Supp. 3d 1192 (C.D. Cal. 2021) ........................... 10, 16

*Carter v. Novartis Consumer Health, Inc.*,
  582 F. Supp. 2d 1271 (C.D. Cal. 2008) ...................... 5, 8, 9, 10

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021) ............................... 21

*Contreras v. Johnson & Johnson Consumer Cos, Inc.*,
  2012 WL 12096581 (C.D. Cal. Nov. 29, 2012) ...................... 24

*Critcher v. L'Oreal USA, Inc.*,
  959 F.3d 31 (2d Cir. 2020) ....................................... 11, 12

iii

DEFENDANT THE PROCTER & GAMBLE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 2:23-cv-01382-DMG-JPR

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006)................................................................17

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018)...............................................................24

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal. 2021) .............................. 13, 15, 16, 18

*Elkies v. Johnson & Johnson Servs., Inc.*,
  2018 WL 11328613 (C.D. Cal. Feb. 22, 2018)...........................15, 16

*Feldman v. Discover Bank*,
  2021 WL 8895125 (C.D. Cal. Dec. 22, 2021).....................................23

*Free v. Bland*,
  369 U.S. 663 (1962) .............................................................................7

*Frost v. Safeway, Inc.*,
  No. 3:21-cv-02137 (N.D. Cal. July 19, 2021)...............................15, 16

*Garcia v. Best W. Norwalk Inn, LLC*,
  2021 WL 4260406 (C.D. Cal. June 14, 2021).....................................19

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  2020 WL 5492990 (C.D. Cal. Sept. 9, 2020).....................................21

*Goldstein v. Walmart, Inc.*,
  2022 WL 16540837 (S.D.N.Y. Oct. 28, 2022)............................... 8, 11

*Gordon v. Target Corp.*,
  2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .......................................15

*Gudgel v. Clorox Co.*,
  514 F. Supp. 3d 1177 (N.D. Cal. 2021) ..............................................18

*Harris v. Topco Associates, LLC*,
  538 F. Supp. 3d 826 (N.D. Ill. 2021).................................................10

*Hartwich v. Kroger Co.*,
  2021 WL 4519019 (C.D. Cal. Sept. 20, 2021)............................2, 15, 16

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018)...........................................................17, 18

iv

*Horti v. Nestle Healthcare Nutrition, Inc.*,
  2022 WL 16748613 (N.D. Cal. Nov. 7, 2022)......................................................20

*Horti v. Nestle HealthCare Nutrition, Inc.*,
  2022 WL 2441560 (N.D. Cal. July 5, 2022)............................................ 12, 18, 21

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).................................................................................7

*Klein v. Ljubljana Inter Auto d.o.o.*,
  2021 WL 6424917 (C.D. Cal. Sept. 13, 2021).....................................................18

*Lokey v. CVS Pharm,, Inc.*,
  2020 WL 6822890 (N.D. Cal. Nov. 20, 2020)................................................13, 15

*Lokey v. CVS Pharm., Inc.*,
  2021 WL 633808 (N.D. Cal. Feb. 18, 2021).......................................... 2, 13, 16

*McCracken v. KSF Acquisition Corp.*,
  2022 WL 18932849 (C.D. Cal. Dec. 15, 2022).....................................................23

*McFall v. Perrigo Co.*,
  2021 WL 2327936 (C.D. Cal. Apr. 15, 2021)................................................10, 16

*Nacarino v. KSF Acquisition Corporation*,
  2022 WL 17178688 (N.D. Cal. Nov. 23, 2022).....................................................24

*Naimi v. Starbucks Corp.*,
  798 F. App'x 67 (9th Cir. 2019) (unpublished).....................................................19

*Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*,
  549 F. Supp. 3d 276 (E.D.N.Y. 2021) ..................................................................15

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008).............................................................................19

*Puerto Rico v. Franklin California Tax-Free Tr.*,
  579 U.S. 115 (2016) ................................................................................................7

*Robinson v. Walgreen Co.*,
  2022 WL 204360 (N.D. Ill. Jan. 24, 2022).....................................................10, 15

*Rodriguez v. Just Brands USA, Inc.*,
  2021 WL 1985031 (C.D. Cal. May 18, 2021)......................................................22

*Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
2023 WL 2768453 (N.D. Cal. Mar. 9, 2023) ........................................................ 10

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...................................................................... 21, 23

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ..................................................................................... 6

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................... 12, 18, 23

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................ 21, 22

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ......................................................................... 7

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ................................................................... 17, 20

*Youngblood v. CVS Pharm.*,
2021 WL 3700256 (C.D. Cal. Aug. 17, 2021) ........................................... *passim*

*Zakikhani v. Hyundai Motor Co.*,
2022 WL 1740034 (C.D. Cal. Jan. 25, 2022) ................................................... 24

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) ........................................................ 20, 22

**Statutes**

21 U.S.C. § 321(i) ............................................................................................... 6

21 U.S.C. § 355h(b)(8) ....................................................................................... 5

21 U.S.C. § 361 .................................................................................................. 6

21 U.S.C. § 379r ........................................................................................... 8, 10

21 U.S.C. § 379s ........................................................................................ 1, 8, 11

**Other Authorities**

21 C.F.R. § 330.1 ................................................................................................ 5

21 C.F.R. § 341.74 ................................................................................................. 5

21 C.F.R. § 341.74(c)(4) ....................................................................................... 5

21 C.F.R. § 341.74(d)(1) ....................................................................................... 5

21 C.F.R. § 701 ..................................................................................................... 6

48 Fed. Reg. 5,852 (Feb. 8, 1983) ........................................................................ 6

Fed. R. Evid. 201(b) ............................................................................................ 19

DEFENDANT THE PROCTER & GAMBLE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No.: 2:23-cv-01382-DMG-JPR

1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that at 9:30 am on June 9, 2023, or as soon thereafter as
3   the matter may be heard before the Honorable Dolly M. Gee, presiding in the United States
4   District Court for the Central District of California, located at 350 West 1st Street, Los
5   Angeles, CA, 90012, Defendant The Procter & Gamble Company ("P&G") will, and
6   hereby does, move to dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1),
7   and 12(b)(6) the Complaint filed by Plaintiff Gabriela Mendoza for lack of standing and
8   failure to state a claim upon which relief may be granted.

9   This Motion is based on this Notice of Motion, the Memorandum of Points and
10  Authorities, the pleadings and papers on file herein, and any evidence and argument as may
11  be presented to the Court.

12  This Motion is made following the conference of counsel pursuant to Local Rule 7-
13  3 which took place on March 9 and April 19, 2023.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

P&G markets a line of topical products under the "Vicks Vapo" brand, including VapoRub, VapoCream, and VapoPatch.  Many of the "Vicks Vapo" products have two versions:  one labeled for children and another that does not specify an age-group.  Although the labels disclose that both versions contain the same ingredients and are safe for adults and children, Plaintiff alleges that the simultaneous marketing of the two versions constitutes deceptive advertising.  Specifically, Plaintiff argues that the labeling of products for children creates the false impression that they "are specifically formulated for children," Compl. ¶ 4, and requires a disclaimer that children's and non-children's versions  are the same.  Plaintiff's claims suffer from multiple defects and should be dismissed.

*First*, Plaintiff's claims relating to VapoRub (an over-the-counter drug) and VapoCream (a cosmetic) are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), which expressly preempts state law claims that impose requirements that are "different from or in addition to, or that [are] otherwise not identical with" federal labeling requirements.  21 U.S.C. § 379r(a)(2), 379s(a).  The Food and Drug Administration ("FDA") strictly regulates statements that manufacturers can make on the labels for over-the-counter drugs and cosmetics.  For some products, the FDA requires different labeling, warnings, and instructions for children's products, but the agency did not mandate any such requirements for VapoRub and VapoCream.  Accordingly, Plaintiff's claims seek to penalize P&G "for declining to include labeling representations beyond what the [FDA] requires for children's [Vapo] products." *Youngblood v. CVS Pharm.*, 2021 WL 3700256, at *3 (C.D. Cal. Aug. 17, 2021) (claims based on failure to make "clear disclosures that there is no pharmacological distinction between 'Infant's Product' and 'Children's Product'" are expressly preempted).

*Second*, apart from preemption, Plaintiff's claims run into the bar on so-called differential pricing claims.  All of Plaintiff's allegations are based on the theory that there is something misleading about the fact that consumers "pay more for the Children's

1

products," even though they "have the same formula and ingredients as the Adult's Vapo products." Compl. ¶ 4–5. But that theory amounts to a non-judiciable pricing grievance— i.e., a theory of deception based on the price of a product—that is not actionable under state consumer protection laws. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1172 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016).

*Third*, Plaintiff fails to plead that there is anything misleading or deceptive about children's Vapo products. The premise of the Complaint is that the phrases "children's" and "For children 2 years+" are somehow sufficient to suggest to consumers that the children's versions contain different ingredients. That theory has wide-ranging consequences: under Plaintiff's argument, no consumer product could be marketed to different age groups or users absent some material difference in the products. Courts in this District, however, have dismissed similar claims as implausible. As one court explained, "products that are identical can be marketed to different audiences: migraine-headache sufferers and regular-headache sufferers, parents of infants and parents of children, adults and children (or other age ranges), professional athletes and weekend athletes, or different genders, to name a few." *Lokey v. CVS Pharm., Inc.*, 2021 WL 633808, at *5 (N.D. Cal. Feb. 18, 2021). This Court should follow this line of cases and dismiss the Complaint. *See also Hartwich v. Kroger Co.*, 2021 WL 4519019, at *6 (C.D. Cal. Sept. 20, 2021) (dismissing similar claims because labeling a medicine for infants does not "imply anything about the Product's pharmacological composition, other than that it is appropriate for children in the stated age range").

For these and the additional reasons set out below, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

### I.   Plaintiff's Challenges to Children's Vapo Products.

P&G manufactures a variety of children's products under the Vicks Vapo brand. These include the three products challenged here—Children's VapoRub (an ointment),

Children's VapoCream (a moisturizing cream), and Children's VapoPatch (a wearable patch).  Compl. ¶ 1.  For each of these products, P&G manufactures a similar version that does not identify an age group.  *Id.* ¶ 2.  Both versions contain the same formulation of ingredients.  *Id.*

The labels of the two versions of the Vapo products are nearly identical.  Each state that the products are an "ointment" (VapoRub), a "moisturizing cream" (VapoCream), and "wearable aroma patches" (VapoPatch).  *Id.* ¶¶ 21, 27, 34.  Plaintiff alleges that the main difference between the products "is that one is labeled for children, and one is labeled for adults."  *Id.* ¶ 49.  Specifically, the children's versions of the products contain the phrase "**children's**" and "**For children 2 years+.**" on the front of the label.



In this case, Plaintiff does not claim that children's Vapo products are unsafe or ineffective for children.  Nor does Plaintiff allege that there is anything literally false or misleading on the label.  Instead, she alleges that the marketing of children's versions of the Vapo products leads consumers to believe that the products are "specifically formulated for children."  *Id.* ¶¶ 4, 41.  Specifically, the Complaint contends that consumers *infer* that

there is something meaningfully different about the children's versions merely because the labels (1) state "children's" and "For children 2 years+," and (2) contain illustrations of a "cat, butterfly," and other cartoons. *Id.* ¶¶ 21, 27, 34. Yet, as Plaintiff herself acknowledges, the labels of both versions disclose the same active and inactive ingredients and have the same dosages and instructions. *Id.* ¶¶ 22–23 (VapoRub); ¶¶ 36–37 (VapoCream); ¶¶ 29–30 (VapoPatch).

Although the labels make clear that the two versions of the Vapo products are identical, Plaintiff faults P&G for failing "to adequately disclose that the Children's Vapo Products are simply the Adult's Vapo products sold at a higher price." Compl. ¶ 41. In Plaintiff's view, P&G's failure to make such a disclosure is deceptive because P&G allegedly "charges a premium for the Children's Vapo products." *Id.* ¶ 49; *see also* Plaintiff's CLRA Demand Letter, Exhibit 1 at 2 (alleging the "Product labels are . . . misleading" because "[t]he Children's Vicks Vapo Products are sold at a premium and are more expensive than the adult's Vicks Vapo products"). Those allegations are false: P&G does not sell its children's Vapo products to its retailers at a premium, and any purported "premium" would be charged by individual retailers over which P&G has no control.

Nonetheless, Plaintiff asserts class action claims for violation of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") (Counts 1–3), breaches of express and implied warranties (Counts 4–5), negligent and intentional misrepresentation (Counts 6–7), and unjust enrichment (Count 8). Compl. ¶¶ 84–156. She also seeks injunctive relief, including an order "compelling" P&G to, among other things, "cease marketing the Products using the misleading and unlawful tactics complained of" in the Complaint. *Id.* ¶ 10.

## II.   FDA Regulations For VapoRub And VapoCream.

The labels of two of the challenged Vapo products—VapoRub and VapoCream—are subject to stringent regulatory requirements established by the FDA. VapoRub is an over-the-counter drug that is governed by an FDA "monograph" that sets forth specific

requirements for labeling.   Similarly, VapoCream is a cosmetic that is likewise subject to a series of FDA labeling requirements.

**A.      FDA regulatory requirements for the labeling of over-the-counter medications.**

The FDA regulates most over-the-counter medications through a monograph process.   A monograph is a set of regulations that describe the conditions under which a category of drugs may be marketed without a prescription.   *See* 21 C.F.R. § 330.1; *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1276 (C.D. Cal. 2008) (describing the monograph process).   A monograph "specifies the permissible active ingredients, indications for use, dosing instructions (which vary with age), and other mandatory labeling" for covered drugs.   *Id.*   An over-the-counter drug that complies with a monograph "is generally recognized as safe and effective and is not misbranded." 21 C.F.R. § 330.1.

VapoRub is a cough suppressant and topical analgesic.   *See* Compl. ¶ 23 (Drug Facts panel).   Its three active ingredients—camphor, eucalyptus oil, and menthol—are cough suppressants, which are also known as "antitussives."   *See id.*   Camphor and menthol also act as topical analgesics, or pain relievers.   *Id.*   VapoRub is therefore subject to two monographs—the monograph for antitussives and the monograph for external analgesics.[1]

The final monograph for antitussives contains detailed and comprehensive labeling requirements.   These requirements include an approved list of indications, warnings, and directions.   *See* 21 C.F.R. §§ 341.74.   The monograph also imposes distinct labeling requirements for certain children's antitussives compared to the adult's versions.   For example, the FDA requires different warning and dosing instructions on labels for certain children's antitussives containing specific ingredients.   *See* 21 C.F.R. § 341.74(c)(4), (d)(1)

---

[1] Under the CARES Act, the tentative final monograph for external analgesics is deemed a Final Administrative Order that has the force of law.   21 U.S.C. § 355h(b)(8)); *see also Youngblood*, 2021 WL 3700256, at *2 (tentative final monograph for internal analgesics deemed to have force of law).

(outlining requirements for children for chlophedianol hydrochloride, codeine, dextromethorphan, diphenhydramine citrate, and diphenhydramine hydrochloride). For other products like VapoRub, however, the FDA determined that the labeling and dosing instructions should be exactly the same for children and adults. *See id.* §§ 341.40(u), 341.74(d)(2). Consistent with the monograph requirements, VapoRub contains 4.8% camphor, 1.2% eucalyptus oil, and 2.6% menthol for the children's version and the version that does not identify an age group. Compl. ¶¶ 22–23.

The final monograph for external analgesics is similar. Like the monograph for antitussives, the monograph for external analgesics sets out detailed labeling requirements. *See* 48 Fed. Reg. 5,852, 5,868 (Feb. 8, 1983) (proposed § 348.50). The FDA approved camphor at dosages of 3% to 11%, and menthol at dosages of 1.25% to 16%, for external analgesic products. *See id.* (proposed §§ 348.12(b)(1), (b)(2)). Here, too, the FDA approved the same ingredient amounts and dosages for adults and children over 2 years old. *See id.* at 5,869 (proposed § 348.50(d)).

## B. FDA regulatory requirements for the labeling of cosmetics.

VapoCream is deemed a cosmetic under the FDCA because it is an "article[] intended to be rubbed . . . or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance." 21 U.S.C. § 321(i). For cosmetics like VapoCream, the FDCA establishes a comprehensive regulatory scheme governing labeling requirements. *See* 21 U.S.C. § 361 *et seq.* Among other things, the FDA has promulgated detailed regulations for cosmetics that include requirements concerning a product's principal display panel, statement of identity, and how ingredients are declared. *See* 21 C.F.R. § 701 *et seq.*

## LEGAL STANDARD

"[P]laintiffs must demonstrate [Article III] standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). When a plaintiff lacks Article III standing, the complaint must be dismissed

for lack of subject matter jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A complaint must also "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Id.* at 678. Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545 (citation omitted).

Claims of the type asserted here that "sound in fraud" must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). A plaintiff thus must allege with particularity "the who, what, when, where, and how" of the misconduct charged, as well as explain why any allegedly false statements are false. *Id.* at 1124 (internal quotation marks and citation omitted).

## ARGUMENT

## I. Plaintiff's Claims Regarding VapoRub And VapoCream Are Expressly Preempted By The FDCA.

The Supremacy Clause of the U.S. Constitution establishes that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Free v. Bland*, 369 U.S. 663, 666 (1962). Where a federal statute contains an express preemption clause, courts "do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted).

The FDCA expressly preempts state law claims that are "different from," "in

addition to," or "otherwise not identical" with federal labeling requirements for over-the-counter drugs and cosmetics.   21 U.S.C. §§ 379r(a)(2), 379s(a).[2]   Here, the FDA has promulgated detailed labeling regulations that authorize the marketing of VapoRub and VapoCream for children, and do not require different labeling for the children's version and the version that does not identify an age group.   For that reason, two other courts in this District have found similar false advertising claims expressly preempted, and this Court should reach the same conclusion here.   *See Youngblood*, 2021 WL 3700256, at *3; *Carter v. Novartis Consumer Health, Inc.,* 582 F. Supp. 2d 1271, 1284 (C.D. Cal. 2008).

### A.   Plaintiff's claims regarding VapoRub are preempted.

In the case of over-the-counter medications, Congress enacted an express preemption provision that was intended to create a regime of "[n]ational uniformity for nonprescrption drugs."   21 U.S.C. § 379r; *see also Goldstein v. Walmart, Inc.*, 2022 WL 16540837, at *5–6 (S.D.N.Y. Oct. 28, 2022) (discussing Act's legislative history).   The express preemption clause—Section 379r—declares that "no State or political subdivision of a State may establish or continue in effect any requirement" that relates to an over-the-counter drug that is "different from or in addition to, or that is otherwise not identical with" federal labeling requirements.   *Id.*   The state "requirements" that are subject to express preemption include false advertising, warranty, and other common law claims.   *See Carter*, 582 F. Supp. 2d at 1284–87.

Here, Plaintiff alleges that the labeling of the children's VapoRub product is deceptive to consumers because its label suggests that it is "specifically formulated for children."   Compl. ¶ 4.   Plaintiff does not contend that children's VapoRub is unsafe or ineffective when used by children over two, or that the label is otherwise misleading in isolation.   But when children's VapoRub is sold at the same time as the other version of VapoRub, P&G's alleged "failure to disclose that the Children's Vicks Vapo Products are

---

[2]  VapoPatch is not an over-the-counter drug or a cosmetic, and is therefore not subject to the FDCA's express preemption provisions.

identical" violates California law.   Ex. 1 at 2; *see also* Compl. ¶ 42 (alleging that P&G "failed to adequately disclose that the Children's Vapo Products are simply the Adult's Vapo products sold at a higher price").   The FDCA expressly preempts Plaintiff's claims because they seek to impose labeling requirements beyond those imposed by the FDA's monographs for antitussives and external analgesics.

As described above, the monographs for antitussives and analgesics authorize the precise combination of ingredients in VapoRub for use in children above 2 years old. Moreover, the monographs impose specific labeling requirements for certain children's products—such as dosages, indications of use, and age-specific warnings—**but not VapoRub**. *Supra* at 5–6. Accordingly, Plaintiff's contention that P&G must disclose that children's VapoRub is identical to the version that does not identify an age group imposes "labeling representations beyond what the [monographs] require[] for [VapoRub]." *Youngblood*, 2021 WL 3700256, at *3.

Two courts in this District have dismissed as preempted similar false advertising challenges to children's medications.   In *Youngblood*, 2021 WL 3700256, a plaintiff alleged that the labeling of infant's acetaminophen was deceptive because it was "the same medicine in the same concentration as a less expensive product marketed for use with children."   *Id.* at *1.   As here, the plaintiff sought "clear disclosures that there is no pharmacological distinction between 'Infant's Product' and 'Children's Product.'"   *Id.* at *3.   The court concluded that the Plaintiff's claims were expressly preempted because they sought "additional, gratuitous representations [that] are not compatible with the FDCA and the FDA's false and misleading labeling provisions."   *Id.*

*Carter* is equally instructive.   There, the plaintiffs challenged as misleading the statements "toddler" and "created especially for toddlers" on certain toddler's cold and cough products.   582 F. Supp. 2d at 1285.   The court found the claims expressly preempted because the FDA approved the dosage and related directions under its monograph, and the plaintiffs' claims would "impose liability upon Defendants for complying with FDA

regulations." *Id.* at 1285–86; *see also Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2023 WL 2768453, at *6 (N.D. Cal. Mar. 9, 2023) (relying on *Carter* and holding Section 379r preempted "representations in [Defendant's] advertisements [that] are 'materially identical' to those on the label approved by the FDA").

Other federal courts outside of this District have reached the same conclusion. For example, in *Harris v. Topco Associates, LLC*, 538 F. Supp. 3d 826 (N.D. Ill. 2021), the court dismissed as expressly preempted claims seeking additional disclosures "that the Infants' Product is the same as the Children's Product." *Id.* at 833. The court explained that the monograph "does not require any specific disclaimers concerning infant products nor the interchangeability of the two products at issue," and the plaintiff's claims thus "seek[] to impose additional obligations on Topco not imposed by the [monograph]." *Id.*; *see also Robinson v. Walgreen Co.*, 2022 WL 204360, at *5 (N.D. Ill. Jan. 24, 2022) (false advertising claims expressly preempted because "Plaintiffs' allegation that the Infants' Product label is misleading because it does not disclose that it has the same formulation as the Children's Product is an attempt to impose a requirement on the labeling of the Infants' Product that is 'not identical with' that imposed by the [monograph]").[3]

Here, too, Plaintiff seeks to impose disclosure requirements beyond what the FDA monographs for antitussives and external analgesics require for VapoRub—namely, a disclosure that children's VapoRub is identical to the other version of VapoRub. But "there is no particular reason to believe that this Court—or any court in a proceeding involving two litigants—would come to a more informed conclusion regarding the label that should

---

[3] Several courts have declined to find preemption in cases involving infant's acetaminophen products. *See, e.g.*, *Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192 (C.D. Cal. 2021); *McFall v. Perrigo Co.*, 2021 WL 2327936 (C.D. Cal. Apr. 15, 2021). But, as *Youngblood* and *Harris* found, those cases are distinguishable from the circumstances here. *See Youngblood*, 2021 WL 3700256, at *3 & n.1 (finding that *McFall* is distinguishable because the complaint sought "to do more than bring the packaging at issue in line with federal requirements," and *Burchfield* "is of little persuasive value" because "the parties there did not present the court with a preemption theory" that identified applicable monographs); *Harris*, 538 F. Supp. 3d at 833 (distinguishing both *McFall* and *Burchfield* because neither sought "specific disclaimers" that "the Infants' Product is the same product as the Children's Product").

be put on a product than the FDA would after a notice-and-comment proceeding in which all interested parties have an opportunity to participate." *Goldstein*, 2022 WL 16540837, at *12 (dismissing claims challenging labeling of cough and cold medication as preempted under the FDCA); *see also, e.g.*, *Amara v. Publix Supermarkets, Inc.*, 2022 WL 3357575, at *5 (M.D. Fla. Aug. 15, 2022) (same). Because Plaintiff cannot "convincingly articulate how [her] requested disclosures are compatible with or identical to the [monographs] or federal law," they are expressly preempted. *Youngblood*, 2021 WL 3700256, at *3.

**B.      Plaintiff's claims regarding VapoCream are preempted.**

Plaintiff's claims challenging children's VapoCream are preempted for the same reasons: they seek to add a disclosure that is not required by federal labeling regulations for cosmetics.

Like over-the-counter-medications, the FDCA expressly bars "any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics" under federal law. 21 U.S.C. § 379s(a). As noted above, the FDCA sets forth comprehensive requirements for the labeling of cosmetics. Yet, similar to VapoRub, none of those regulations requires P&G to disclose when a children's product contains the same formulation of ingredients as a version not labeled for children. Plaintiff's claims are therefore preempted because they seek to impose labeling requirements that are "different from or in addition to" the FDCA.

The Second Circuit's decision in *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31 (2d Cir. 2020), is analogous. There, the plaintiff challenged a cosmetic cream because its packaging allegedly "fail[ed] to disclose" certain information. *Id.* at 36. The court affirmed dismissal of the plaintiffs' claims because "[i]f Plaintiffs were permitted to move forward with their claims, they would be using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Id.* Because Congress and the FDA had "established the comprehensive

regulatory regime governing cosmetics," the court determined that the FDA also "could have chosen to mandate such additional labeling" that the plaintiffs sought. *Id.* Since the FDA did not establish such requirements, "Plaintiffs cannot now seek to impose those requirements through alternative means grounded in state law." *Id.* at 37. The *Critcher* court's analysis applies with full force to Plaintiff's challenges to VapoCream.

## II. Plaintiff's Claims Should Be Dismissed Because She Fails To Allege That Children's Vapo Products Are Misleading.

The Complaint should also be dismissed because it fails to plausibly allege that P&G made a false or misleading statement. Under California law, all of Plaintiff's claims require allegations that a defendant made a false or misleading statement, or omitted a material fact.[4] As shown below, the Complaint fails to do so because there is nothing misleading about the labeling of children's Vapo products.

### A. Plaintiff's claims are impermissibly based on differential pricing.

Plaintiff's claims should be dismissed because they are impermissibly based on an alleged difference in pricing between children's Vapo products and Vapo products that do not say "children's." Here is how we know that differential pricing is at the heart of the Complaint: Plaintiff alleges that P&G misleads consumers to believe that children's Vapo products "are specifically formulated for children" when, in fact, the two versions "have the same formula and ingredients." Compl. ¶¶ 4–5. But if the two versions cost ***exactly the same***, there would be no reason for anyone to believe that there is something fundamentally different about the children's versions. That is precisely why Plaintiff accuses P&G of violating California law by charging "a premium for the Children's Vapo products compared to the adults' Vapo products for the same product quantity." *Id.* ¶ 49.

The problem with Plaintiff's theory is that differential pricing between two products

---

[4] *Horti v. Nestle HealthCare Nutrition, Inc.*, 2022 WL 2441560, at *7–9 (N.D. Cal. July 5, 2022) (FAL, UCL, CLRA, and warranty claims); *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) (negligent misrepresentation); *Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010) (intentional misrepresentation).

is not cognizable under state consumer protection laws. *See, e.g.*, *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1172 (C.D. Cal. 2014). In *Boris*, the plaintiff alleged that Wal-Mart engaged in deceptive advertising by charging more for "extra strength" headache medicine, even though it "contain[ed] the exact same active ingredients" as the regular medicine. *Id.* as 1166. But the court held that the price differential could not be a basis for a deceptive advertising claim because price "do[es] not constitute an act or statement on which to premise liability," *id.* at 1168, and "price regulation is a quintessentially political question and thus nonjusticiable," *id.* at 1172. The Ninth Circuit affirmed, concluding that "[t]he fatal flaw" in the claims was that deceptive advertising could not be based on "the mere fact of the proximate presentation of the two products with their different colors and prices." *Boris v. Wal-Mart Stores, Inc.*, 649 F. App'x 424, 425 (9th Cir. 2016) (unpublished)

Courts have applied *Boris* to dismiss virtually identical challenges to infant's medications. For example, in *Lokey v. CVS Pharmacy, Inc.*, 2020 WL 6822890 (N.D. Cal. Nov. 20, 2020), the plaintiff challenged the labeling of infant's acetaminophen products on the ground that the products were identical to children's acetaminophen, but were sold at a premium. Relying on *Boris*, the court dismissed the claims as non-justiciable because the claims were at their core about "price differential[s]" between the two products. *Id.*; *see also Lokey v. CVS Pharm., Inc.*, 2021 WL 633808, at *4 (N.D. Cal. Feb. 18, 2021) (dismissing amended complaint on same grounds); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 646 (N.D. Cal. 2021) (dismissing challenges to infant's acetaminophen because "Eidmann cannot challenge Walgreens' pricing decisions" under *Boris*).

Plaintiff's claims should be dismissed under the reasoning of *Boris*, *Lokey*, and *Eidmann*. At their core, Plaintiff's claims are predicated on the contention that children's Vapo products are sold at a premium to other Vapo products. For example, Plaintiff emphasizes that the "Children's Vapo Products are identical or substantially similar to the adult's Vapo products [yet] ***the adult Vapo products cost less*** . . . . Defendant tricks

consumers into thinking they are buying cough and cold treatment products specially formulated for children."   Compl. ¶ 50 (emphasis added).   Plaintiff further alleges that "[n]o reasonable consumer who understood that the Children's Vapo Products were formulated identically to the adult's Vapo products would **choose to pay more for them**," *id.* ¶ 52 (emphasis added), and that children's Vapo products "are falsely advertised and misbranded" because they "**are sold at a premium**."   Ex. 1 at 1 (emphasis added); *see also,* Compl. ¶¶ 4 ("[C]onsumers are willing to pay more for the Children's products."), 45 ("The Children's products also cost more than the Adult's products."), 62 ("The Children's Products costs more than the Adult's Products without misleading labeling . . . .").

These allegations confirm that any purported "deception" is necessarily based on the differences in price between the two versions of Vapo products—a theory that runs headlong into *Boris*.

**B.**     **There is nothing deceptive about the marketing of children's products.**

Even apart from the bar against differential pricing claims, Plaintiff's claims should be dismissed because there is nothing misleading about the simultaneous marketing of children's and non-children's versions of consumer products.

Plaintiff's claims are highly unorthodox.  The Complaint does not contend that there is anything literally false on the label of children's Vapo products, or that the children's Vapo products are unsafe or ineffective.  And if children's Vapo products were the only ones on the market—i.e., if P&G did not market different versions of Vapo products that did not identify an age group—Plaintiff could not possibly claim that the labeling of children's Vapo products deceives consumers.  Plaintiff nonetheless contends that, by marketing two versions of Vapo products at the same time, P&G is supposedly misleading consumers into believing that "there is something different" about the children's products.  Compl. ¶ 41.

Courts in this Circuit, however, have rejected the contention that the marketing of a

product to an age group implies that there is something fundamentally different about the product. For example, in *Hartwich v. Kroger Co.*, 2021 WL 4519019 (C.D. Cal. Sept. 20, 2021), the plaintiff alleged that infant's acetaminophen was deceptive because the label "implies that the acetaminophen concentration for this product is 'specifically formulated for—or otherwise to be used exclusively for—infants.'" *Id.* at *1. The court dismissed the claims because the representations on the label—including "infants" and "Ages 2-3 Years"—did not "imply anything about the Product's pharmacological composition, other than that it is appropriate for children in the stated age range." *Id.* at *6. Other courts are in accord. *See Eidmann*, 522 F. Supp. 3d at 645 (rejecting argument that "the inclusion of the word 'infants' in the [product's] name would lead a reasonable consumer to construe the product as specially formulated for infants"); *Lokey*, 2020 WL 6822890 at *5–6 (dismissing claims because reasonable consumer would not believe that the product was "specially formulated for infants"); *Frost v. Safeway, Inc.*, No. 3:21-cv-02137, slip op. at 9 (N.D. Cal. July 19, 2021) (holding that "the mere fact that one is called 'Infants' and one is called 'Children's' is insufficient to deceive customers into thinking that the Infant Product is formulated differently or contains a different active ingredient than the Children's Product").[5]

The case for dismissal here is even stronger than in *Hartwich*, *Eidmann*, and *Frost*. In those cases, the defendant (1) stated that the infant's product was for "Ages 2-3 years," while the children's version was for "Ages 2-11 years," and (2) directed consumers to "compare" the infant's product to infant's Tylenol. *Hartwich*, 2021 WL 4519019, at *5–6; *Eidmann*, 522 F. Supp. 3d at 639; *Frost*, slip op. at 3. Plaintiffs alleged that those statements led consumers to believe that the two products were differently formulated, yet

---

[5] *See also Robinson*, 2022 WL 204360, at *6–7 (relying on *Eidmann* and rejecting claim that product's name suggested it was specially formulated for infants); *Gordon v. Target Corp.*, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (rejecting claim that labeling product for toddlers suggested it would provide "unique nutritional value"); *Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*, 549 F. Supp. 3d 276, 283 (E.D.N.Y. 2021) (dismissing deception claims challenging infant's acetaminophen and distinguishing *Elkies* and *Youngblood*).

the courts still dismissed the claims as implausible.  Here, by contrast, Plaintiff's claims rest solely on the words "children's" and "For children 2 years+."  Compl. ¶ 2.  Those words, however, do not imply anything more than that the products are "appropriate for children in the stated age range."  *Hartwich*, 2021 WL 4519019, at *6.  And while Plaintiff also points to cartoons on the children's Vapo products packaging, "[i]t is hard to imagine that a reasonable consumer would believe the medicine is specially formulated for [children] based on an illustration, especially one so simplistically one-dimensional as the one on the [products]."  *Eidmann*, 522 F. Supp. 3d at 644.

Plaintiff may cite a few cases in which courts declined to dismiss claims challenging infant's medications.  All of these cases had what the Complaint lacks:  express statements on the label suggesting that the products were uniquely formulated for a certain group.  For example, the plaintiffs in *Youngblood*[6] pointed to the following statements to support their claims:  "(1) the name 'Infants' Pain + Fever'; (2) the instruction to 'Compare to active ingredients in Infants' Tylenol Oral Suspension'; and (3) the picture of what appears to be a mother holding a young child relative to the older child featured on the Children's Product."  2020 WL 8991698, at *3.  Unlike the plaintiffs in those cases, Plaintiff here cannot cite the equivalent of deceptive infant images or misleading instructions to compare to active ingredients in other "infant's'" products.  Thus, as the *Hartwich* court explained, "those decisions involved factual questions that are not present in this case."  *Hartwich*, 2021 WL 4519019, at *6.[7]

This Court should follow *Hartwich*, *Eidmann*, *Lokey*, and *Frost* and hold that there is nothing inherently misleading about marketing two different versions of a product at the

---

[6] In *Youngblood*, the court later dismissed these same claims as preempted following a motion for judgment on the pleadings.  *See* 2021 WL 3700256, at *2.

[7] The *Hartwich* court distinguished *Burchfield*, 534 F. Supp. 3d 1192 (C.D. Cal. 2021), *McFall v. Perrigo Co.,* 2021 WL 2327936 (C.D. Cal. Apr. 15, 2021), *Elkies v. Johnson & Johnson Servs., Inc.,* 2018 WL 11328613 (C.D. Cal. Feb. 22, 2018), and *Youngblood,* 2020 WL 8991698.

same time.  If the law were otherwise, no manufacturer could market a product specifically to children without inadvertently creating the impression that the product was "specifically formulated for children."  Compl. ¶ 4.  State consumer protection laws do not permit such a result.

## C.   Any duty to disclose claim is legally deficient under California law.

Plaintiff's claims should be dismissed for a third and final reason: she fails to satisfy the stringent requirements for a non-disclosure claim under California law.

At bottom, Plaintiff's claims are based on the notion that P&G "failed to adequately disclose that the Children's Vapo Products are simply the Adult's Vapo products sold at a higher price."  Compl. ¶ 42; *see also* Ex. 1 at 2 ("YOUR failure to disclose that the Children's Vicks Vapo Products are identical to the adult's Vicks Vapo Products violates Federal regulations and California law.").  It is well settled, however, that "California courts have generally rejected a broad obligation to disclose." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  Manufacturers can only be held liable for alleged omissions in narrow circumstances:  "'the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Antonyan v. Ford Motor Co.*, 2022 WL 1299964, at *4 (C.D. Cal. Mar. 30, 2022) (Gee, J.) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).  Absent an affirmative statement to the contrary, a duty to disclose only arises where the omission (1) caused an "unreasonable safety hazard" or (2) among other things, "affect[ed] the central functionality of a product." *Hodsdon v. Mars, Inc.*, 891 F.3d 857–63 (9th Cir. 2018); *see also Antonyan*, 2022 WL 1299964, at *4 (similar).

Here, Plaintiff does not plead sufficient facts supporting a duty to disclose.

*First*, the alleged omission is not "contrary to a representation actually made by the defendant." *Antonyan*, 2022 WL 1299964, at *4.  Plaintiff contends that P&G's alleged omission is that "the Children's Vapo Products are simply the Adult's Vapo products sold at a higher price."  Compl. ¶ 42.  But the children's Vapo products do not state or even

suggest that they are differently formulated than the other versions that do not specify an age group. *See supra* at 3–4. In fact, the label affirmatively discloses that the two versions contain the exact same formulation of ingredients. For that reason, "the allegedly omitted fact is not contrary to any of the representations on the [products'] packaging." *Eidmann*, 522 F. Supp. 3d at 647 (concluding that similar representations on infant's acetaminophen did not trigger duty to disclose).

*Second*, Plaintiff does not even attempt to allege that the omission causes an "unreasonable safety hazard" or affects "the central functionality of the product." *Antonyan*, 2022 WL 1299964, at *4. The Complaint lacks any allegations suggesting that the children's products failed to perform as advertised, much less that they presented a safety risk. Nor could Plaintiff allege that the omission affected the products' "central functionality" because an alleged omission affects a product's central functionality only when the omitted information "renders th[e] products incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864. Plaintiff therefore cannot plead an omission claim. *See, e.g.*, *Klein v. Ljubljana Inter Auto d.o.o.*, 2021 WL 6424917, at *7 (C.D. Cal. Sept. 13, 2021) (rejecting omission theory where plaintiff failed to allege a safety hazard or effect on central functionality).

*Third*, P&G satisfied its duty to consumers by disclosing the precise ingredients for children's Vapo products on the back of the label. Accordingly, "there are numerous disclosures on the packaging that would allow consumers to ascertain that the products contain identical formulations," further undermining any alleged non-disclosure claim. *Eidmann*, 522 F. Supp. 3d at 647.

## III. Plaintiff's Claims Should Be Dismissed Because She Fails To Plead An Injury.

Every claim asserted in the Complaint requires Plaintiff to allege facts plausibly

---

18

showing that she suffered an injury as a result of P&G's alleged conduct.[8]   Here, the Complaint speculates that "Plaintiff paid a premium for these Products due to the misleading labelling on the Products' packaging."   Compl. ¶ 57.   Yet the Complaint is wholly silent on the prices Plaintiff paid or the prices she would have paid absent the purportedly unlawful conduct.   There is a reason for the absence of such allegations: Plaintiff alleges she purchased products from CVS and Walmart, Compl. ¶ 53, but the websites of CVS[9] and Walmart[10] reflect that they charge *identical prices* for the two versions of Vapo products.   Plaintiff's claims should therefore be dismissed for failure to plead an injury.   As the Ninth Circuit recently held, "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (unpublished).

Plaintiff attempts to fill the gap in her allegations by citing to the price of Vapo

---

[8] *See Horti*, 2022 WL 2441560, at *8 (dismissing UCL, FAL, CLRA, and warranty claims for failure to adequately allege injury); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) ("resulting damage" is element of negligent misrepresentation claim); *UMG Recordings*, 117 F. Supp. 3d at 1109 (C.D. Cal. 2015) (same for intentional misrepresentation); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593–94 (2008) (same for unjust enrichment).

[9] *Compare* https://www.cvs.com/shop/vicks-vaporub-cough-suppressant-topical-analgesic-ointment-prodid-1011507 ($8.99 for VapoRub) and https://www.cvs.com/shop/vicks-vapopatch-for-adults-children-ages-6-5-count-prodid-368310 ($13.49 for VapoPatch), *with* https://www.cvs.com/shop/vicks-vaporub-childrens-cough-suppressant-ointment-1-76-oz-prodid-1720028 ($8.99 for children's VapoRub) and https://www.cvs.com/shop/vicks-vapopatch-with-long-lasting-soothing-vicks-vapors-for-children-ages-6-5-ct-prodid-386204 ($13.49 for children's VapoPatch).

[10] *Compare* https://www.walmart.com/ip/Vicks-VapoRub-Topical-Chest-Rub-Analgesic-Ointment-Over-the-Counter-Medicine-1-76-Oz/10316196?athbdg=L1102&from=topicPage ($6.44 for VapoRub) and https://www.walmart.com/ip/Vicks-VapoPatch-Non-Medicated-Wearable-Arome-Patch-Long-Lasting-Soothing-Vicks-Vapors-5-Ct/490539249?athbdg=L1103&from=searchResults ($8.94 for VapoPatch), *with* https://www.walmart.com/ip/Vicks-Children-s-VapoRub-Topical-Chest-Rub-Cough-Suppressant-Over-the-Counter-Medicine-1-76-oz/861021090?from=topicPage ($6.44 for children's VapoRub) and https://www.walmart.com/ip/Vicks-Children-s-VapoPatch-Non-Medicated-Wearable-Aroma-Patch-Soothing-Vicks-Vapors-Ages-6-5-ct/307112418?from=searchResults ($8.97 for children's VapoPatch). The court may take judicial notice of these third-party retailer websites because they are not subject to reasonable dispute and they are materials relied upon by Plaintiff in the Complaint. *See* Fed. R. Evid. 201(b); *See Garcia v. Best W. Norwalk Inn, LLC*, 2021 WL 4260406, at *2 (C.D. Cal. June 14, 2021) (taking judicial notice of websites relied upon in complaint).

products sold by other third-party retailers besides CVS and Walmart.  Those allegations are irrelevant because Plaintiff never purchased products from them.  In any event, Plaintiff's allegations about other retailers actually *contradict* her price premium theory. For example, Plaintiff alleges that Walgreens charges *more* for VapoPatch as compared to children's VapoPatch.  *See* Compl. ¶ 47.  At most, Plaintiff's allegations suggest that different retailers charge different prices for children's Vapo products, which underscores why *Plaintiff* must plead that she paid higher prices to sustain her claims.

The court's decision in *Horti*, 2022 WL 16748613, is instructive.  There, the plaintiffs pointed to listings on the defendant's website in an effort to show a price premium.  *Id.* at *6.  The court rejected those allegations as insufficient to plead an injury because "[t]hese plaintiffs do not state how much they paid for the [products]," nor did they "state how much they would have paid absent the allegedly deceptive labels."  *Id.* Since Plaintiff likewise does not offer these allegations, she "simply do[es] not provide enough detail beyond the barest of descriptions of their injury to support standing."  *Id.*; *see also Horti v. Nestle Healthcare Nutrition, Inc.*, 2022 WL 16748613, at *6 (N.D. Cal. Nov. 7, 2022) (dismissing amended complaint for lack of injury where the plaintiffs alleged no facts about their own purchases).

## IV.   Plaintiff's Claims Fail For Additional Reasons.

In addition to the defects identified above, Plaintiff's claims fail for additional, independent reasons.

### A.   The CLRA, UCL, and FAL claims should be dismissed (Counts 1–3)

Plaintiff's CLRA, UCL, and FAL claims should be dismissed for failure to plead reliance.  Each of those claims require Plaintiff to allege with particularity under Rule 9(b) how she relied on the allegedly false or misleading statement. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 765, 767 (C.D. Cal. 2022) (collecting cases).  And to the extent that Plaintiff's claims are based on omissions, Plaintiff must also plead that P&G knew of the false or misleading statement at the time of Plaintiff's

purchase. *See Wilson*, 668 F.3d at 1145.

The Complaint does not contain any well-pleaded allegations on either score. Instead, Plaintiff baldly asserts that she "read and relied on" the challenged representations and P&G "should have known" that the representations were misleading.   Compl. ¶¶ 54, 109.   These are precisely the type of "[t]hreadbare recitals of the elements of a cause of action" that are insufficient to plead a plausible claim. *Iqbal*, 556 U.S. at 678.

Plaintiff's claims for equitable relief under the CLRA, UCL, and FAL should also be dismissed because Plaintiff has an adequate legal remedy in the form of monetary damages. In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Ninth Circuit held that the existence of an adequate legal remedy bars claims for equitable relief such as restitution and injunctive relief.   *Id.* at 844. Here, Plaintiff has adequate legal remedies through her warranty, misrepresentation, and CLRA damages claims. The existence of an adequate remedy at law therefore bars (i) her CLRA claim to the extent it seeks restitution and injunctive relief, and (ii) her claims for violations of the UCL and FAL in their entirety.   *See Gibson v. Jaguar Land Rover N. Am., LLC,* 2020 WL 5492990, at *4 (C.D. Cal. Sept. 9, 2020) (dismissing UCL and CLRA claims to the extent they sought equitable relief because CLRA damages claim provided legal remedy); *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 649 (C.D. Cal. 2021) (dismissing UCL and FAL claims for same reason).

**B.**     **The warranty claims should be dismissed (Counts 4–5).**

Express Warranty.   To plead a breach of express warranty claim, Plaintiff must allege facts showing how the products do not conform to the seller's "affirmation," "promise," or "description" of the product. *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013).   The phrases "children's" and "For children 2 years+" are not express warranties that the products are differently formulated—they merely indicate that the products are appropriate for those age ranges.   Even if they were express warranties, Plaintiff does not dispute that the phrases are true: the products can be suitably

sold to children. *See Horti*, 2022 WL 2441560, at *9 (dismissing express warranty claim where plaintiff did not allege an actionable misrepresentation). Nor has Plaintiff adequately alleged that she relied on these statements in making her purchase. *See Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1120 (C.D. Cal. 2021) (dismissing warranty claim where plaintiff did not adequately plead reliance).

Implied Warranty. The implied warranty claims should be dismissed for two independent reasons. *First*, Plaintiff did not purchase the products directly from P&G, and therefore privity does not exist. *See* Compl. ¶ 15 (alleging a purchase from CVS and Walmart). Under California law, privity with the defendant is required for an implied warranty claim. *See Bem*, 2015 WL 6089819, at *2. *Second*, even if privity were not required, Plaintiff fails to plead that the products "lack[] even the most basic degree of fitness for ordinary use," which is a required element of her implied warranty claims. *See Viggiano*, 944 F. Supp. 2d at 896 (dismissing implied warranty claim because plaintiff did not plead that the product was "contaminated or contained foreign objects" (citation omitted)).

## C.    The common-law claims suffer from multiple defects (Counts 6–8).

Plaintiff's common law claims should be dismissed at the outset because they do not identify which state's law applies, leaving P&G and the Court guessing as to the actual claim being asserted. *See ZF-TRW*, 601 F. Supp. 3d at 760 ("Because Plaintiffs 'must identify which State's or States' law they rely upon' and have not done so, their 'nationwide' claims for fraud and unjust enrichment fail." (citation omitted)); *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at *7 (C.D. Cal. May 18, 2021) (dismissing express warranty, unjust enrichment, and fraud claims for failure to allege the governing state law). Even assuming California law applies, Plaintiff's claims suffer from several defects.

### 1.    The misrepresentation claims fail.

Plaintiff's negligent and intentional misrepresentation claims should be dismissed

under the economic loss rule.  Under California law, the economic loss doctrine precludes tort claims when a plaintiff suffers only economic damages as opposed to physical injuries. Because Plaintiff only seeks to recover for economic damages stemming from her purchase, the economic loss doctrine precludes her misrepresentation claims.  *See, e.g.*, *UMG Recordings*, 117 F. Supp. 3d 1092, 1105–06 (dismissing intentional and negligent misrepresentation claims).   Plaintiff's intentional misrepresentation claim also fails because she fails to adequately allege reliance or knowledge of falsity.  *See supra* at 20–21.  Plaintiff's assertion that P&G "made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent," Compl. ¶ 144, is a paradigm "conclusory allegation" that courts find "insufficient" to state a fraud claim.  *UMG Recordings*, 117 F. Supp. 3d at 1106 (collecting cases).

### 2. The unjust enrichment claim fails.

The unjust enrichment claim should be dismissed for two reasons. *First*, Plaintiff has an adequate remedy of law in the form of monetary damages, which requires dismissal of her equitable unjust enrichment claim under *Sonner*.  *Supra* at 21.  *Second*, while courts can "construe a sufficiently pled claim for unjust enrichment as one for quasi-contract," this requires a plaintiff to show "defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense."  *Feldman v. Discover Bank*, 2021 WL 8895125, at *3 (C.D. Cal. Dec. 22, 2021) (Gee, J.).  Here, Plaintiff does not plead any facts suggesting that it was "unjust" for P&G to retain funds for a product that indisputably functioned as advertised.  This claim fails for this additional reason.  *See id.* (dismissing claim as insufficiently pled).

### V. Plaintiff Lacks Standing To Assert Certain Aspects Of Her Claims.

Even if Plaintiff's claims could overcome dismissal, Plaintiff lacks standing to assert two particular aspects of her claims.

*First*, Plaintiff only has standing to sue over the products she purchased:  VapoRub and VapoPatch.  Compl. ¶ 53.  Plaintiff lacks standing to sue over products she has not

purchased because a plaintiff "has not been injured by false advertising on products she did not purchase." *McCracken v. KSF Acquisition Corp.*, 2022 WL 18932849, at *2 (C.D. Cal. Dec. 15, 2022). For that reason, courts in this District regularly dismiss claims challenging unpurchased products for lack of Article III and statutory standing. *See, e.g.*, *Zakikhani v. Hyundai Motor Co.*, 2022 WL 1740034, at *4 (C.D. Cal. Jan. 25, 2022) (dismissing UCL, FAL, and CLRA claims); *Contreras v. Johnson & Johnson Consumer Cos, Inc.*, 2012 WL 12096581, at *2 (C.D. Cal. Nov. 29, 2012) (similar). The Court should dismiss Plaintiff's claims related to VapoCream, which she does not allege she purchased.

*Second*, Plaintiff lacks standing to seek injunctive relief. To have Article III standing to pursue injunctive relief, Plaintiff must allege facts plausibly showing "a sufficient likelihood that [she] will again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (cleaned up). Here, there is no risk that Plaintiff will again suffer the same purported harm. The premise of all of Plaintiff's claims is that she was unaware that the children's Vapo products contain the same product formulations as the Vapo products that do not specify an age group. *See* Compl. ¶¶ 53–57. Now that Plaintiff has "learned that the Children's Products [are] identical to the Adult's products," Compl. ¶ 60, she can no longer claim to be unaware that the products contain the same ingredients. For that reason, "going forward," Plaintiff will be able to "evaluate product claims and make appropriate purchasing decisions," meaning "injunctive relief would serve no meaningful purpose." *Nacarino v. KSF Acquisition Corporation*, 2022 WL 17178688, at *2 (N.D. Cal. Nov. 23, 2022) (citation omitted).

## CONCLUSION

For the reasons stated, the Complaint should be dismissed with prejudice.

DATED:  April 20, 2023                COVINGTON & BURLING LLP

                                      By:  */s/ Ashley M. Simonsen*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ashley M. Simonsen (SBN 275203)
asimonsen@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4782
Facsimile: (424) 332-4749

Henry Liu (*pro hac vice forthcoming*)
hliu@cov.com
Dillon H. Grimm (*pro hac vice forthcoming*)
dgrimm@cov.com
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendant The Procter & Gamble Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for P&G, certifies that this brief is fewer than 25 pages, which complies with Judge Gee's Initial Standing Order.  *See* ECF No. 11.

DATED:  April 20, 2023

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen